1  ROBERT A. DOLINKO (State Bar No. 076256)
   radolinko@thelenreid.com
2  CHRIS D. BAKER (State Bar No. 181557)
   cbaker@thelenreid.com
3  THELEN REID BROWN RAYSMAN & STEINER LLP
4  101 Second Street; Suite 1800
   San Francisco, CA 94105
5  Telephone: (415) 371-1200
   Facsimile:  (415) 371-1211
6

7  Attorneys for Defendant
   THE HERTZ CORPORATION
8

9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11

12  MELINDA FRIEND and JOHN NHIEU, on          Case No.:
13  behalf of themselves, and on behalf of all
    others similarly situated,
14                                             **DECLARATION OF KRISTA**
                                               **MEMMELAAR IN SUPPORT OF**
15                  Plaintiffs,                **REMOVAL OF ACTION**

16       vs.

17  THE HERTZ CORPORATION, and DOES 1          **Complaint Filed:   September 6, 2007**
    through 50, inclusive,                     **Trial Date:        None**
18
19                  Defendants.

20

21       I, Krista Memmelaar, hereby declare and state:

22       1.     I am a Manager, Employee Relations employed by The Hertz Corporation

23  ("Hertz").  My office is located at 225 Brae Boulevard, Park Ridge, New Jersey, the corporate

24  headquarters of Hertz and its domestic subsidiaries.  I have been employed by Hertz for 11

25  years and I am familiar with Hertz' operations in the United States.  In my position, I have

26  access to information and data regarding the staffing, business operations and revenues of

27  Hertz and its domestic subsidiaries.

28

2.    I have read the Complaint in the lawsuit filed by former Managers Melinda Friend and John Nhieu in the Superior court of California, County of Alameda. This declaration is based on my personal knowledge, and if called upon to testify as to the facts set forth in this declaration, I could and would competently testify to them.

3.    Hertz either directly, or through its domestic subsidiaries, operates "on-airport" and "off-airport" rental facilities in 44 of the 50 states. Melinda Friend and John Nhieu worked as managers at Hertz' "on-airport" rental facility located at the airport in San Jose, California.

4.    Hertz is incorporated in the State of Delaware.

5.    This declaration is based on my personal knowledge, and business records kept in the regular course of business. With respect to those business records, the entries are made in a timely manner by people with knowledge of the information, and it is the regular practice of Hertz' business to maintain such records. In my position, I have access to all the corporate information which is included in this declaration. If called upon to testify as to the facts set forth in this declaration, I could and would competently testify to them.

6.    As of June 30, 2007, Hertz had approximately 1,606 on-airport and off-airport profit-center rental locations in the U.S. Of those 1,606 profit-center locations, approximately 273 were within the State of California. Hertz does not purchase property for its rental locations. Thus, if "tangible property" is considered to be leased real estate, only about 17.0 percent of Hertz' tangible property is located within California. The next largest states in terms of Hertz' profit-center rental locations as of June 30, 2007 were: Florida 155 (9.7%); Texas 123 (7.7%); Illinois 83 (5.2%); and New York 83 (5.2%). The second quarter of 2007 is the most recent period for which Hertz has such data available.

7.    As of June 30, 2007, approximately 11,230 full-time employees in the United States worked at Hertz' on-airport and off-airport locations. Approximately 2,299 (or 20.5% of this national total) worked at these locations in the State of California. The next largest states in terms of employees were: Florida 1,602 (14.3%); Texas 858 (7.6%); Illinois 543

DECLARATION OF KRISTA MEMMELAAR IN SUPPORT OF REMOVAL OF ACTION

1    (4.8%); and New York 614 (5.5%).  There has been no meaningful change in the comparative

2    data by state over the past few months.

3          8.      The total rental revenue earned by all on-airport and off-airport rental operations

4    nationwide in 2006 (the last full year for which data is available) was approximately $4.371

5    billion.  Of this amount, approximately $811 million (or 18.6%) was revenue earned by

6    operations in the State of California.  The next largest states in terms of 2006 revenues from

7    on-airport and off-airport rental operations were:  Florida $505 million (11.6%); New York

8    $213 million (4.9%); Texas $296 million (6.8%); and Illinois $158 million (3.6%).

9          9.      In terms of rental activity in 2006, the last full year for which data is available,

10   Hertz' on-airport and off-airport locations processed approximately 20,940,000 vehicle

11   transactions (i.e., rentals) nationwide that year.  Of this figure, approximately 3,801,000

12   transactions (or 18.2%) were processed in the State of California.  The next largest states in

13   terms of on-airport and off-airport vehicle transactions in 2006 were:  Florida 2,245,000

14   (10.7%); New York 943,000 (4.5%); Texas 1,566,000 (7.5%); and Illinois 873,000 (4.2%).

15         10.     There is no single state where a majority of Hertz' business takes place or

16   revenues are derived.  Hertz' business activities are spread among the 44 states where it does

17   business.

18         11.     The leadership of Hertz and its domestic subsidiaries is found at our New Jersey

19   corporate headquarters.  The major administrative operations for Hertz and its domestic

20   subsidiaries are found in Park Ridge, New Jersey and Oklahoma City, Oklahoma.  The core

21   executive and administrative functions for Hertz and its domestic subsidiaries are carried out

22   in New Jersey and, to a lesser extent, Oklahoma.  Hertz' overall executive and administrative

23   functions are not found in the State of California.

24         12.     For employment purposes, Hertz considers full-time employees to be those who

25   are anticipated to work 40 hours per week or more.

26         13.     Hertz' Corporate Payroll Department is responsible for generating payroll

27   checks, including those for managers working at the on-airport rental locations in California.

28   The Corporate Payroll Department maintains these payroll records in the regular course of

1  business, it is the responsibility of that department to do so, and entries to the payroll system

2  are made by individuals responsible for doing so.

3      14.    The Corporate Payroll Department ran a report reflecting all Station Managers

4  and Senior Station Managers (also respectively referred to as Location Manager 1 and

5  Location Manager 2) employed by Hertz at its on-airport rental operations in California from

6  September 6, 2003 through September 6, 2007, along with a listing of the total number of

7  weeks that they worked (and for which they received paychecks).

8      15.    The report I received from the Corporate Payroll Department reflected that

9  Hertz employed 342 Station Managers and Senior Station Managers (and their current

10  equivalents at the airport locations, Location Managers 1 and 2) at its locations in California

11  during the period September 6, 2003 through September 6, 2007.  Together, they worked a

12  total of 26,421 weeks.

13      16.    The report I received from the Corporate Payroll Department also provided

14  salary data for the 342 Station Managers and Senior Station Managers (Location Managers

15  Levels 1 and 2) in California.  During the period September 6, 2003 through September 6,

16  2007, the average annual base salary earned by these on-airport managers in California was

17  approximately $40,000.

18      17.    The equivalent hourly rate for a manager earning $40,000 a year would be

19  $19.23 per hour (calculated by dividing $40,000 by 2,080 - - [40 hours per week x 52 weeks =

20  2,080 hours per year]).

21      18.    I understand that Ms. Friend and Mr. Nhieu allege that Hertz did not pay them

22  and other similarly situated employees in California for overtime hours worked.  The

23  Complaint, however, does not quantify the amount of unpaid overtime allegedly worked, and

24  Hertz maintains that Ms. Friend, Mr. Nhieu and all other on-airport managers are exempt

25  under the administrative, executive and/or other applicable exemptions and thus they are not

26  entitled to be paid overtime.  Nonetheless, I have employed an estimate that, on average, each

27  Station Manager and Senior Station Manager at Hertz' on-airport rental operations worked

28  five (5) hours of "overtime" per week, at an average rate of $28.85 per hour (which is one and

1    one-half times $19.23, the average hourly rate for all such managers during the last four years,

2    as stated above). This average estimate is based upon my knowledge and information

3    regarding the on-airport rental operations and the hours worked by on-airport Station

4    Managers and Senior Station Managers. If entitled to such payment, each such manager

5    would have earned approximately $144.25 in "overtime" per week. When multiplied by the

6    26,421 weeks of work by individuals who held the position of Station Manager and Senior

7    Station Manager (as noted above), the potential liability for unpaid "overtime" totals

8    $3,811,229.

9        19.    I understand that Ms. Friend and Mr. Nhieu also claim that they and all other

10   Station Managers and Senior Station Managers were not provided meal and rest periods.

11   Hertz maintains that Ms. Friend, Mr. Nhieu and the managers they claim to represent were

12   exempt employees and thus were not denied any legally required meal or rest periods.

13   Nevertheless, I understand that each putative class member claims that he or she is entitled to

14   recover "one additional hour of pay" at his or her regular rate for each meal period and for

15   each rest period that was not provided. Using the average regular hourly rate of $19.23 as

16   calculated above, and assuming just one missed meal period and one missed rest period per

17   week, the amount in dispute for this element of Plaintiffs' claim is $1,016,152. This is

18   calculated by taking the number of workweeks worked by the Station Managers and Senior

19   Station Managers in California for the four years prior to the filing of the lawsuit (26,421),

20   multiplying that by one day per week, multiplying that by $19.23 per hour, and multiplying

21   that by two (for alleged missed meal periods and rest periods).

22       20.    I understand that Ms. Friend and Mr. Nhieu also claim that managers were

23   terminated without being paid all wages due and therefore each such class member is owed

24   thirty days waiting time penalties. While disputing this claim, if we assume each manager was

25   paid on average $153.84 per day (8 hours x $19.23 per hour), waiting time penalties would be

26   $4,615.20 per terminated manager. As there are 68 California on-airport Station Managers

27   and Senior Station Managers whose employment terminated in the period September 6, 2006

28

1  through September 6, 2007, the amount in dispute for this aspect of Plaintiffs' claims is

2  approximately $313,834.

3        21.    Adding the figures I have calculated above for amounts in dispute, the sum is

4  $5,141,215; well in excess of five million dollars.

5        I declare under penalty of perjury under the law of the United States that the foregoing

6  is true and correct.  This  declaration was executed on October 9, 2007, at Las Vegas, Nevada.

7

8                                        Krista M. Memmelaar
                                         Krista Memmelaar

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KRISTA MEMMELAAR IN SUPPORT OF REMOVAL OF ACTION